UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICK E. STANSBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:12-cv-1334-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Order on Complaint for Judicial Review

Plaintiff Rick E. Stansberry applied in April 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since October 1, 2004. An administrative law judge ("ALJ") held a hearing on August 19, 2011, at which Mr. Stansberry appeared and testified. On November 4, 2011, acting for the Commissioner of the Social Security Administration, the ALJ found that Mr. Stansberry is not disabled. The Appeals Council denied review of the ALJ's decision on August 6, 2012, rendering the ALJ's decision for the Commissioner final. Mr. Stansberry timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Stansberry contends that the ALJ erred by failing to give controlling weight to the opinion of his treating physician that in an eight hour day, Mr. Stansberry could only consistently, without resting, stand less than twenty

minutes, walk less than ten minutes, and carry less than ten pounds.  As addressed below, the court finds that the ALJ's decision to discount the opinion of the treating physician is supported by substantial evidence in the record, and substantial evidence exists for the ALJ's findings.  The Commissioner's decision is therefore AFFIRMED.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1]  Mr. Stansberry is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

---

[1]  Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled, despite his current medical condition. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The impairment must also meet the twelve-month duration requirement. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled. The individual claiming disability bears the

burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is narrow and deferential. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). This court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

In addition, the ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). Moreover, the ALJ need not

4

address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

## The ALJ's Sequential Findings

Mr. Stansberry testified he was born on December 11, 1961, and was 49 years old at the time of the ALJ's decision issued November 4, 2011. At step one, the ALJ found that Mr. Stansberry had not engaged in substantial gainful activity since October 1, 2004, the alleged onset date. At step two, the ALJ identified the following severe impairments: degenerative disc disease of the cervical and lumbar spine, right carpal tunnel syndrome, right subclavian mass, headaches, and depression. At step three, the ALJ evaluated Mr. Stansberry's severe impairments against the listed impairments in 20 C.F.R. Part 404 and found that none was met, a finding Mr. Stansberry does not challenge.

For purposes of steps four and five, the ALJ adopted the following residual functional capacity (RFC)[2] to perform the full range of light work with the following limitations:

> Occasional climbing of ramps and stairs; no climbing ladders, ropes or scaffolding; occasional balancing, stooping, kneeling, crouching and crawling; only intermittent and no more than occasional exposure to slippery and uneven surfaces; no repetitive flexion and extension of the right wrist. Further, the claimant has the mental parameters and in the context of performing, simple, routine, repetitive, concrete, tangible tasks, the claimant

---

[2] Residual functional capacity (RFC) represents what an individual can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a).

is able to sustain attention and concentration skills to carry out work-like tasks with reasonable pace and persistence.

The ALJ determined that Mr. Stansberry is limited to light work and therefore is not capable of performing his past relevant work, which had been performed at a medium or greater level of exertion. At step five and based on the opinion of a vocational expert, the ALJ decided that he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (R. 31). Accordingly, the ALJ found that Mr. Stansberry is not disabled.

## Mr. Stansberry's Assertions of Error

Mr. Stansberry contends that the ALJ improperly rejected the opinion of Dr. Shah, his treating physician, which should have been given controlling weight. Moreover, he contends the ALJ should have contacted Dr. Shah if the basis for his opinion was not clear. The court addressees Mr. Stansberry's assertions below while also summarizing the medical and other evidence relied on by the ALJ.

## Analysis

**A.     The ALJ properly determined that the treating physician's opinion was not entitled to controlling weight.**

1. The Treating Physician Rule

The weight an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(c). A medical opinion by a treating physician or other acceptable treating medical source about the nature and severity of a claimant's impairments, including any resulting mental or physical restrictions, is

6

entitled to "controlling weight" if it is well-supported by objective medical evidence and is not inconsistent with other substantial evidence. *Id.* § 404.1527(d)(2). *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006). ("[T]reating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record.") An ALJ may also discount a treating physician's opinion when it is "internally inconsistent" or is inconsistent with the opinion of a consulting physician. *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). And while a treating physician's opinion is entitled to controlling weight if well supported by medically acceptable techniques and not inconsistent with other substantial evidence, it is not the final word on a claimant's disability. *Books v. Chater,* 91 F.3d 972, 978 (7th Cir. 1996). An ALJ may discount a treating physician's opinion under these circumstances as long as she minimally articulates her reasons for doing so. *Skarbek v. Barnhart,* 390 F.3d at 503.

If a treating physician's opinion is not entitled to controlling weight, then it must be evaluated using the same factors relevant to weighing other medical opinions. That is, the ALJ decides the weight to accord it based on the degree to which a medical opinion (a) is supported by relevant evidence and explanations; (b) considered all evidence pertinent to the claimant's claim; (c) is consistent with the record as a whole; and (d) is supported or contradicted by any other factors. *Id.* § 404.1527(c)(3)-(6). The physician's field of specialty and the nature and extent of her treatment relationship with the claimant are also considered. *Id.* 404.1527(c)(2)(i), and (c)(2)(ii).

2. Dr. Shah's Opinion

Mr. Stansberry's treating physician, Dr. Paresh Shah, had ordered a series of cervical spine x-rays, which were conducted on June 26, 2009. These x-rays showed prominent degenerative change at the C5-6 level (R. 198). Nerve test results demonstrated mild right carpal tunnel syndrome (R. 203). Dr. Shah ordered an MRI of the cervical spine, conducted on July 6, 2009, which revealed degenerative disc disease at C2-C3 through C6-C7, and mild C5-C6 central spinal stenosis. On July 29, 2009, Mr. Stansberry saw Dr. Deepak Guttikonda for leg pain (R. 347). Dr. Shah diagnosed Mr. Stansberry with bilateral carpal tunnel syndrome on July 13, 2010, as indicated on a patient history form (R. 166, R. 454). On September 1, 2010, Mr. Stansberry received another series of x-rays of the cervical spine, which showed degenerative disc disease at C5-C6. The x-ray also revealed degenerative facet joint arthritis at multiple levels of the cervical spine (R. 418-419). The medical record also shows that he received multiple nerve block and epidural steroid injections in 2011.

Dr. Shah filled out an undated form entitled "Medical Opinion Form Re: Ability to Do Work-Related Activities" (R. 499). On this form, Dr. Shah circled restrictive limitations in response to multiple choice questions that indicated that Mr. Stansberry had limitations that would prevent him from working. Dr. Shah circled the most restrictive limitation in seven of eight multiple choice questions, which contained one margin note stating he "can't lift" and two other notes stating he "can't work" (R. 499).

3. The ALJ's Analysis

The ALJ decided that Dr. Shah's opinion was not entitled to controlling weight, and was worth little weight, for three reasons: (1) its inconsistency with the overall record of evidence, (2) the discrepancies in clinical medical findings, and (3) the undated medical opinion form provided very little explanation of evidence relied upon in forming the opinion.

The ALJ stated in her findings that the opinion of Dr. Shah is "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" (R. 28). The ALJ goes on to note that a complete examination by the consultative examiner revealed Mr. Stansberry "could sit, stand, lift, and walk normally," and she stated in her findings that "the objective and clinical medical evidence of record fails to fully support the claimant's allegations to the extent alleged." In doing so, the ALJ relied on the medical evidence, testimony, and state agency medical doctors (*Id.*). For example, when Mr. Stansberry was examined on June 5, 2010, by Dr. Kassab, he was able to grasp, lift, carry, and manipulate objects in both hands and perform repeated movements with both feet. Dr. Kassab observed he was able to bend over with restriction and squat normally, while being able to sit, stand, and walk normally with and without use of a cane, which he deemed not medically necessary (R. 215). Dr. Shah, conversely, diagnosed him with bilateral carpal tunnel syndrome on July 13, 2010, while his grip and sensory examination continued to be within normal limits. (R. 166, R. 454).

In addition, Dr. Kasaab also evaluated Mr. Stansberry during a consultative examination on June 5, 2010, for lumbar and cervical spine pain. The range of motion was decreased in his lumbar spine, but his gait and posture were normal when Mr. Stansberry did not use his cane. The range of motion of his cervical spine was normal (R. 215-16). On May 16, 2011, he received a left C-6 epidural steroid injection. His gait was upright and unassisted. His strength was 5/5 in upper and lower extremities and there was no focal motor or sensory deficient evident. It was noted the radiation down his left arm could be a C6 phenomenon, and his joints were otherwise stable. (R. 470-71). This evidence is inconsistent with the Medical Opinion Form submitted by Dr. Shah, who noted he would be unable to stand less than 20 minutes and walk less than 10 minutes consistently in an 8-hour workday (R. 499).

In evaluating the opinion evidence, the ALJ also relied on the opinions of Dr. D. Neal and Dr. Amy S. Johnson, Ph.D., and gave "weight to the opinions of the State Agency medical consultants who concluded that the claimant was capable of light work." (R. 28) The ALJ clearly explained her reasons for not giving Dr. Shah's opinions controlling weight and for her reliance on other experts: discrepancies in clinical findings and exaggeration of symptoms, the conclusory and unexplained nature of Dr. Shah's opinions, and inconsistent findings by the consultative examiner. (R. 28).[3] The ALJ also noted that medications had helped Mr.

---

[3] The ALJ's credibility determination is not being challenged by Mr. Stansberry. This determination is a factual one and is reviewed deferentially. It will not be set aside unless it is blatantly wrong. *Shideler v. Astrue,* 688 F.3d 306.

Stansberry's migraine headaches, and she observed that he had been discharged from physical therapy for noncompliance (R. 29, R. 379). The ALJ's decision to reject Dr. Shah's opinion and instead accept the medical opinions of Dr. Kassab, Dr. Neal, and Dr. Johnson, Ph.D. must be accepted by the court because it is supported by substantial evidence adequate to support her conclusion.

As to the functional limitations written on Dr. Shah's opinion form, the court finds substantial evidence permitted the ALJ to weigh the functional limitations listed by Dr. Shah against those of the consultative examiner and other medical consultants, whose findings were inconsistent with the conclusions listed by Dr. Shah. The ALJ weighed the discrepancies in Dr. Shah's findings with those of other clinical findings, including the consultative examiner, and gave greater weight to the opinions of the state agency doctors, whose opinions were adopted in her findings (R. 28).

B.     **The ALJ was not required to contact the treating physician.**

Mr. Stansberry contends that the ALJ should have contacted Dr. Shah for further clarification of the reasons for his opinion. The court finds this contention without merit. Social Security Ruling 96-5p provides that for treating sources, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner *and* the adjudicator cannot ascertain the basis of the opinion from the case record. Nothing in the record demonstrates the ALJ was unable to ascertain the basis for Dr. Shah's

opinion. She simply found the opinion, for the reasons already stated, not worthy of significant weight.

## Conclusion

For the foregoing reasons, the Commissioner's decision must be AFFIRMED because it is supported by substantial evidence adequate to support her conclusion.

So ORDERED.

Date: 03/27/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system